UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  O  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| ISABEL MARTINEZ | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Shaun Setareh<br>Lynn Whitlock<br>Louis Marlin | Michael Stortz | |

Proceedings:   **DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** (filed 12/14/10)

## I.   INTRODUCTION

On August 28, 2009, plaintiff Vivian Cuadras, on behalf of herself and others similarly situated, filed a class action in Los Angeles Superior Court against MetroPCS Wireless, Inc. ("MetroPCS" or "defendant"). On October 29, 2009, defendant timely removed the case to this Court based on diversity jurisdiction over the putative class action under the Class Action Fairness Act of 2005.

On November 22, 2010, the Court granted plaintiff leave to file a first amended complaint substituting Rosanna Trejo in place of Vivian Cuadras as the named plaintiff. See Dkt. No. 69. On November 22, 2010, plaintiff filed a first amended complaint against MetroPCS alleging: (1) violation of California's Consumer Legal Remedies Act ("CLRA") (Civil Code § 1750, et seq.); (2) unfair business practice in violation of Unfair Competition Laws ("UCL") (Business and Professions Code § 17200, et seq.); (3) violation of California's False Advertising Laws ("FAL") (Business and Professions Code § 17500, et seq.); (4) breach of contract; (5) fraud; and (6) negligent misrepresentation.

On December 14, 2010, defendant filed the instant motion to compel arbitration and stay the litigation pending arbitration. On January 10, 2011, plaintiff filed an opposition to defendant's motion. On January 21, 2011, the Court stayed the action pending the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 563 U.S. -

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

---, 131 S. Ct. 1740 (2011).  On May 18, 2011, following the Supreme Court's ruling in Concepcion, both parties filed status reports.  On August 1, 2011, defendant filed a reply in support of the instant motion.  After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

**II.   FACTUAL BACKGROUND**

Between October 2008 and December 2009, plaintiff activated four wireless lines of cellular telephone service at Digicom Wireless, an independent MetroPCS dealer in Compton, California.  FAC ¶¶ 21–23; Declaration of Monica Egan ("Egan Decl.") ¶¶ 6, 12–17.  It is MetroPCS's standard procedure to give customers a copy of a Start of Service Request Form, including a printed copy of the then-current MetroPCS Terms and Conditions of Service ("T&Cs").  Egan Decl. ¶¶ 6, 13, 17.  Plaintiff has not submitted any evidence denying that she received the T&Cs when she activated her cellular service.  See FAC ¶ 26 ("The only documents provided to plaintiff by MetroPCS upon initiation of service were the documents that came with her telephone, the form she filled out with her name, telephone number and address, and the receipt for her purchase.").

The T&Cs state that use of service constitutes acceptance of and agreement to the terms and conditions.  See Egan Decl, Exhs. C & E.  For example, the T&Cs plaintiff would have received when she activated her third and fourth lines of service with MetroPCS provide, in part:

> **IMPORTANT: PLEASE READ THIS AGREEMENT CAREFULLY. IF YOU ARE A NEW CUSTOMER, WHEN YOU INITIATE SERVICE BY ATTEMPTING TO PLACE A CALL ON METROPCS'S WIRELESS SYSTEM OR TO USE ANY OTHER SERVICE, YOU AGREE TO THIS AGREEMENT AND ALL APPLICABLE LAWS.  BY USING METROPCS'S WIRELESS SYSTEM OR ANY OTHER SERVICE, YOU ARE INDICATING YOUR INTENT TO BE BOUND BY THE TERMS AND CONDITIONS OF SERVICE OF THIS AGREEMENT.  IF YOU ARE A NEW CUSTOMER AND YOU DO NOT AGREE TO THIS AGREEMENT, DO NOT INITIATE SERVICE.  IF YOU ARE AN EXISTING CUSTOMER AND THE SERVICE IS PROVIDED TO YOU UNDER A PRIOR AGREEMENT AND YOU DO NOT AGREE**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS - 6 |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

**TO THIS AGREEMENT, YOU MUST TERMINATE SERVICE AS SET FORTH IN THE PRIOR AGREEMENT; PROVIDED, HOWEVER, THAT IF YOU CHOOSE TO TERMINATE SERVICE YOU WILL STILL BE BOUND BY THE PRIOR AGREEMENT, INCLUDING YOUR OBLIGATION TO PAY ANY OUTSTANDING AMOUNTS.**

Egan Decl., Exh. E (emphasis and typography in original).  MetroPCS revised its T&Cs three times after plaintiff activated her last line of service.  Id. ¶¶ 18, 20, 22, 32–34.  To notify customers of amendments to its T&Cs, MetroPCS sends a text message to each line of service the customer has activated.  Id., Exhs. G, and M.  These notifications generally provide: "Please pay $# by # for Acct # to avoid service interruption.  MetroPCS has updated their Terms and Conditions @ http://www.metropcs.com."  Id.

At all relevant times, the MetroPCS T&Cs have contained an arbitration provision obligating MetroPCS and its customers to resolve their disputes through binding arbitration.  The arbitration agreement plaintiff received when she activated her last line of service provides:

> **Arbitration: Dispute Resolution.**  Any claim, dispute or controversy . . . by either you or us against the other, . . . arising from or relating in any way to this Agreement or Services provided to you under this Agreement, . . . shall be resolved, upon the election by you or us, by binding arbitration. . . .

Egan Decl., Exh. E (emphasis in original); see also id., Exh. L (providing similar language in current version of T&Cs).  The T&Cs that plaintiff received when she activated her third and fourth lines of service contain a class action waiver, requiring MetroPCS customers to arbitrate their disputes individually rather than collectively:

> No class actions, other representative actions, or joinder or consolidation of any Claim with a Claim of any other person or entity shall be allowable in arbitration, without the written consent of both you and us.

Egan Decl., Exh. E.  This version of the T&Cs does not allow plaintiff the opportunity to opt out of arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

The amended T&Cs contain a more prominent and detailed class action waiver that states:

> **IMPORTANT: READ THIS AGREEMENT CAREFULLY. IT REQUIRES THE USE OF INDIVIDUAL ARBITRATION RATHER THAN JURY TRIALS OR CLASS ACTIONS TO RESOLVE DISPUTES.**
> . . . .
> **Arbitration Agreement; Dispute Resolution.** . . . NO CLASS ACTIONS, CONSOLIDATED ACTIONS, REPRESENTATIVE ACTIONS, OR JOINDER OR CONSOLIDATION OF ANY DISPUTE WITH A DISPUTE OF ANY OTHER PERSON OR ENTITY, SHALL BE ALLOWED IN ARBITRATION. ALL PARTIES TO THE ARBITRATION PROCEEDING MUST ARBITRATE IN THEIR INDIVIDUAL CAPACITY ONLY AND MUST BE INDIVIDUALLY NAMED. THE ARBITRATOR MAY AWARD DECLARATORY OR INJUNCTIVE RELIEF ONLY IN THE ARBITRATION PROCEEDING AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM.

Egan Decl., Exh. L (emphasis and typography in original). The amended T&Cs allow plaintiff to opt out of arbitration entirely within 30 days of the date of the notice of amendment without any adverse consequences to her service. Id.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitrations agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 24 (1983)).

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS - 6 |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).  The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms.  Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (2002).  "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  Concepcion, 131 S. Ct. at 1746.

## IV.    DISCUSSION

MetroPCS argues that plaintiff agreed to arbitrate her disputes with MetroPCS pursuant to the T&Cs, and requests that the Court compel her to do so.  Plaintiff responds that MetroPCS waived its right to compel arbitration, that she did not knowingly and voluntarily agree to arbitrate, and that the arbitration agreement is unconscionable.

### A.    Whether Defendant Waived the Right to Compel Arbitration

Plaintiff argues that MetroPCS waived the right to compel arbitration by removing this action to federal court, and defending against Cuadras's claims for more than one year before moving to compel arbitration.  Mot. at 3–7; Pl.'s Status Report at 6–7.

> In determining waiver, a court can consider (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    JS - 6

| | | | |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

delay affected, misled, or prejudiced the opposing party.

Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting St. Agnes Med. Ctr. v. PacifiCare of Cal., 31 Cal. 4th 1187, 1196 (2003)).

    Despite the fact that MetroPCS actively litigated in federal court for over a year without seeking to assert its rights under the arbitration agreement, the circumstances of this case do not warrant a finding that MetroPCS waived its right to compel arbitration. The arbitration provision in Cuadras's T&Cs contained a class action waiver with no opt-out right. See Egan Decl., Exh. C. Prior to the Supreme Court's decision in Concepcion, any motion to compel arbitration would have been subject to the Discover Bank rule, and therefore futile. See Discover Bank v. Super. Ct., 36 Cal. 4th 148, 162 (2005) (holding class action waivers in arbitration agreements unconscionable where found in contracts of adhesion, and it is alleged that party with the superior bargaining power carried out a scheme to cheat large numbers of consumers out of individually small sums of money). In Concepcion, however, the Supreme Court found that the FAA preempts the Discover Bank rule, and held that class action waivers in arbitration agreements are enforceable. Concepcion, 131 S. Ct. at 1753. Because it would have been futile for MetroPCS to file a motion to compel arbitration earlier, MetroPCS did not act inconsistently with a known existing right to compel arbitration.[1] See Quevedo v. Macy's, Inc., CV 09-1522 GAF MANX, 2011 WL 3135052, at *3–5 (C.D. Cal. June 16, 2011) (finding no waiver on the same basis); Estrella v. Freedom Fin., No. C 09-3156 SI, 2011 WL 2633643, at *4–5 (N.D. Cal. July 5, 2011) (same); In re Cal. Title Ins. Antitrust Litig., No. 08-01341 JSW, 2011 WL 2566449, at *3 (N.D. Cal. June 27, 2011) (same); Villegas v. US Bancorp, No. C 10-1762 RS, 2011 WL 2679610, at *1 (N.D. Cal. June 20, 2011) (same).

    **B.**     **Whether Plaintiff Agreed to the Arbitration Agreement**

    Plaintiff argues that there is a triable issue of fact as to whether she knowingly and willingly agreed to the arbitration agreement. See Mot. at 17–20; Pl.'s Status Report at

---

    [1] On December 14, 2010, MetroPCS filed the instant motion to compel arbitration and a motion to stay the case pending the Supreme Court's decision in Concepcion. As discussed above, the Court granted MetroPCS's motion to stay the case pending the Supreme Court's decision in Concepcion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

16–26.

Courts apply the "ordinary state-law principles that govern the formation of contracts" when determining whether the parties have agreed to arbitrate. Kaplan, 514 U.S. at 944. "When an arbitration agreement is challenged on the ground that no agreement to arbitrate exists between the parties, the court can decide the issue as a matter of law if there is no genuine issue of material fact regarding contract formation." Double D Trade Co. v. Lamex Foods, Inc., No. 09-0919, 2009 U.S. Dist. LEXIS 116329, at *7–8 (W.D. Wash. Dec. 14, 2009) (citing Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1141 (9th Cir. 1991)). "[T]he district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." McCarthy v. Providential Corp., No. C 94-0627 FMS, 1994 WL 387852, at *2 (N.D. Cal. Jul. 19, 1994).

Plaintiff contends that MetroPCS has not produced sufficient evidence that she actually received the T&Cs when she initiated her wireless service. Pl.'s Status Report at 16. Plaintiff points out that MetroPCS has not produced any signed agreement or testimony of anyone who can establish that she was actually provided with the T&Cs. Id. at 18. Rather, MetroPCS relies upon the testimony of one of its employees that it is a "standard business practice" to provide customers with the T&Cs when they activate service. See Egan Decl. ¶ 7. Plaintiff further asserts that MetroPCS's use of text message to give notice of an amendment to the T&Cs is invalid because it constitutes a unilateral amendment adding an arbitration provision. Id. at 19–21 (citing Badie v. Bank of Am., 67 Cal. App. 4th 779, 803 (1998); Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal., 495 F.3d 1062, 1065 (9th Cir. 2007)). Accordingly, plaintiff contends that she is entitled to a trial on the threshold issue of whether a valid arbitration agreement exists. Id. at 23–27 (citing 9 U.S.C. § 4; Garbacz v. AT Kearny, Inc., No. C05-05404, 2006 WL 870690, at *2 (N.D. Cal. Apr. 4, 2006)).

Plaintiff further argues that even if she was provided the T&Cs upon the initiation of service, she did not knowingly and willingly accept the arbitration agreement because MetroPCS holds itself out as a "no contract" wireless service provider. Opp'n at 17–19; Pl.'s Status Report at 15–16. Therefore, plaintiff argues, she cannot be held to have consented to any contractual arbitration provision. Opp'n at 17; (citing Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 993 (1972) ("an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

provisions of which he was unaware, contained in a document whose contractual nature is not obvious.")); Pl.'s Status Report at 21–22. Plaintiff further contends that it is not reasonable to expect consumers to understand and appreciate the meaning of a notice sent via text message that T&Cs have been "updated." Opp'n at 18.

  MetroPCS responds that plaintiff has failed to submit any evidence denying that she received copies of the T&Cs when she initiated her wireless service. Reply at 6. MetroPCS further argues that the record regarding contract formation is overwhelming. Id. MetroPCS has provided testimony that it was its standard practice to provide customers with a copy of the T&Cs each time they activated a line of service. Id. Plaintiff activated service four times, and MetroPCS maintains that each time plaintiff would have been provided a copy of the T&Cs and a "Welcome Guide," which referred her to the T&Cs on MetroPCS's website. Id. (citing Egan Decl. ¶¶ 10, 13, 17). MetroPCS further argues that in March, May, and November 2010, plaintiff received notification via text message that the T&Cs had been amended. Id. at 7 (citing Egan Decl. ¶¶ 20–22, 35). MetroPCS points out that plaintiff never terminated her service or opted out of the arbitration agreement. Id. Therefore, MetroPCS maintains that plaintiff has failed to create a genuine issue of material fact as to contract formation. Id. (citing Double D Trade Co., 2009 U.S. Dist. LEXIS 116329, at *7–13; Rodriguez v. Sim, No. 08-3982, 2009 U.S. Dist. LEXIS 39445, at *16 (N.D. Cal. Apr. 10, 2009)).

  MetroPCS further responds that plaintiff's arguments regarding the use of text message to give notice of revisions to the T&Cs miss the mark. Reply at 7–8. As an initial matter, MetroPCS points out that the original version of the T&Cs provides that MetroPCS "reserve[s] the right to provide notice [of amendments to the T&Cs] to you by . . . short message service. . . ." Egan Decl., Exh. C. MetroPCS argues that Badie is distinguishable because there, unlike here, defendant amended the agreement to add an entirely new alternative dispute resolution clause. Reply at 7 (citing Badie, 67 Cal. App. 4th at 803). MetroPCS contends that Douglas is distinguishable because unlike the present case, the defendant in Douglas never provided direct notice of the amendments, but instead posted them directly to its website. Id. (citing Douglas, 495 F.3d at 1065).

  The Court finds that plaintiff agreed to the arbitration agreement contained in the original T&Cs. As an initial matter, there does not appear to be any genuine issue of material fact as to whether plaintiff was provided with the T&Cs. MetroPCS has introduced evidence that its standard business practice is to provide consumers with a copy of the T&Cs upon initiating service. This evidence, along with the fact that plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

activated lines of service on four separate occasions, is sufficient to satisfy MetroPCS's initial burden of establishing that plaintiff received the T&Cs. For her part, plaintiff has failed to adduce any evidence challenging MetroPCS's assertion or demonstrating that she was not actually given a copy of the T&Cs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (where the moving party meets its initial burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c), (e). Accordingly, no rational trier of fact would be able to find that plaintiff did not receive the T&Cs when she activated her lines of service.

Plaintiff's argument that the T&Cs are not a valid contract due to MetroPCS's advertising is unavailing. Although it is true that no contract exists "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient," here, the T&Cs are clearly contractual in nature. Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001). The document plaintiff received when she activated her lines of service is entitled "Terms and Conditions," and states in bold text in capital letters:

> **IMPORTANT: PLEASE READ THIS AGREEMENT CAREFULLY. IF YOU ARE A NEW CUSTOMER, WHEN YOU INITIATE SERVICE BY ATTEMPTING TO PLACE A CALL ON METROPCS'S WIRELESS SYSTEM OR TO USE ANY OTHER SERVICE, YOU AGREE TO THIS AGREEMENT AND ALL APPLICABLE LAWS.**

See Egan Decl., Exh. E. The Court is not persuaded by plaintiff's argument that the T&Cs cannot be a contract because MetroPCS advertises that it is a "no contract" wireless service provider.[2] Despite MetroPCS's advertising, plaintiff must have understood on some level that a contract existed because she has alleged a claim against

---

[2] The evidence in the record demonstrates that MetroPCS's use of the phrase "no contract" in its advertising is designed to differentiate prepaid services (which generally require no signed, annual commitment and no early termination fee) from postpaid services (which typically require term commitments of one or two years with an early termination fee). See generally Reply Declaration of Beth O. Arnese.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

MetroPCS for breach of contract. See FAC ¶¶ 67–68. Furthermore, even if plaintiff somehow thought, based on MetroPCS's advertising, that it offered wireless service without any terms whatsoever, she was disabused of that notion when she received the T&Cs. See Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 31 (2d Cir. 2002) (under California law, "receipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms.").

Finally, the Court finds that plaintiff's arguments regarding the sufficiency of notice of amendments to the T&Cs and MetroPCS's change-of-terms provision implicate the separability doctrine, which requires certain challenges to contracts containing arbitration clauses to be heard by the arbitrator rather than by the court. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406–07 (1967) (holding that a fraudulent-inducement defense that applied to the contract as a whole, as opposed to the arbitration clause in particular, was for the arbitrators to consider in the first instance). Therefore, the Court concludes that the issues of whether plaintiff had sufficient notice of, and agreed to, subsequent amendments to the T&Cs is properly reserved for the arbitrator to decide in the first instance.

### C. Whether the Arbitration Agreement is Unconscionable

Having found that an arbitration agreement exists, the Court considers whether it is unenforceable for being procedurally and substantively unconscionable. "Under generally applicable California law, 'courts may refuse to enforce an unconscionable arbitration agreement.'" Quevedo, 2011 WL 3135052, at *10 (quoting Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003)). A contract is unconscionable where it is both procedurally and substantively unconscionable. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 99 (2000). Procedural and substantive unconscionability need not be present in the same degree, and courts generally employ a "sliding scale" approach to evaluate unconscionability. Gentry v. Superior Court, 42 Cal. 4th 443, 469 (2007). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz, 24 Cal. 4th at 114. "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." Gentry, 42 Cal. 4th at 469.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS - 6 |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

### 1. Procedural Unconscionability

"The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 581 (2007). Procedural unconscionability can arise from either oppression or surprise. Id. " Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id. (internal quotation marks and citations omitted).

Plaintiff argues that the arbitration agreement is procedurally unconscionable because MetroPCS represents that it is a "no contract" wireless provider. Pl.'s Status Report at 9–10. Plaintiff's attempt to re-frame her "no contract" argument in the context of procedural unconscionability is unconvincing. As discussed above, there is no triable issue of fact that plaintiff was provided with the T&Cs containing the arbitration agreement. The original arbitration agreement provided to plaintiff cannot be said to have been hidden in the prolix. The T&Cs originally provided to plaintiff were four pages long, and the arbitration provision took up over half the fourth page appearing after the title: "**Arbitration: Dispute Resolution**." Egan Decl., Exh. C (emphasis and typography in original).[3]

Plaintiff next argues that the T&Cs are procedurally unconscionable because they are an adhesion contract. Opp'n at 10–12. The Ninth Circuit, applying California law, has held that "[a] contract is procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject

---

[3] The California Court of Appeal's decision in Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1329–30 (1999) does not compel a different result. In that case, the court found surprise where an employer provided its employee a copy of its employee handbook, contained in a large three-ring binder, and pressured her to sign a form acknowledging receipt of the handbook without allowing her time to review the arbitration agreement set forth therein. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS - 6 |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

it." Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003); see also Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability.").

MetroPCS responds that the arbitration agreement is not a contract of adhesion because plaintiff had the opportunity to opt out of arbitration entirely.[4] Reply at 10. In support of its argument, plaintiff cites authority for the proposition that providing a meaningful opportunity to opt out can preclude a finding of procedural unconscionability. Id. at 10 (citing Circuit City Stores, Inc., v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (arbitration agreement not procedurally unconscionable where employee had right to opt out of the arbitration program); Circuit City Stores v. Ahmed, 283 F.3d 1198, 1201 (9th Cir. 2002) (arbitration agreement providing 30 day opt out provision not procedurally unconscionable); Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1269–70 (C.D. Cal. 2008) ("Because the Arbitration clause containing [a class action] waiver was not presented on a take-it-or-leave-it basis, but gave [plaintiff] sixty days to opt out, it was not unconscionable.").[5]

Although the amended T&Cs contain an arbitration provision that allows plaintiff 30 days to opt out of arbitration entirely without any adverse consequences to her service, see Egan Decl., Exh. F, the T&Cs that plaintiff agreed to when she activated her fourth line of wireless service contain no such provision, see Egan Decl., Exh. E. Given that the

---

[4] MetroPCS also argues that there is no oppression because plaintiff could have chosen from other wireless service providers in California. Reply at 9–10. The California Court of Appeal, however, rejected the same argument in Gatton. There, the Court held that the "use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives." Gatton, 152 Cal. App. 4th at 585.

[5] Plaintiff does not discuss the Najd and Ahmed line of authority, and instead argues that Gentry compels a finding that the arbitration agreement is procedurally unconscionable. See Mot. at 11; Pl.'s Status Report at 12–13. The Court of Appeal's decision in Gentry, however, is inapposite. The arbitration provision at issue in that case was "not entirely free from procedural unconscionability," despite an opt out provision, because the defendant employer "made [it] unmistakably clear that [it] preferred that the employee participate in the arbitration program." Gentry, 42 Cal. 4th at 471–72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

question of whether plaintiff agreed to the amended T&Cs is properly reserved for the arbitrator, the Court cannot rely upon the 30 day opt out provision in determining whether the arbitration agreement is procedurally unconscionable. Therefore, Najd, Ahmed, and their progeny are not on point.

The arbitration agreement plaintiff received when she activated her last line of service is a standard form contract provided to all MetroPCS customers. It was drafted by MetroPCS, the party with superior bargaining power, and because it did not contain an opt out provision, it was offered on a take-it-or-leave-it basis. Therefore, it is a contract of adhesion and is procedurally unconscionable. See Gatton, 152 Cal. App. 4th at 586; Flores, 93 Cal. App. 4th at 853; Adams, 279 F.3d at 893.

### 2. Substantive Unconscionability

Having determined that the arbitration agreement is procedurally unconscionable, the Court turns to the matter of substantive unconscionability. Under California law, a contract is enforceable, no matter how great the degree of procedural unconscionability, unless it is also substantively unconscionable. Armendariz, 24 Cal. 4th at 114. Substantive unconscionability focuses on whether the substantive terms of the contract are unduly harsh and one-sided nature. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486–87 (1982).

Plaintiff's primary argument has been that the class waiver in the arbitration agreement is unconscionable under Discover Bank. See Opp'n at 9–13. However, the Supreme Court in Concepcion held that the Discover Bank rule is preempted by the FAA. The Supreme Court explained that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Concepcion, 131 S. Ct. at 1748. The Supreme Court also found that the policy concerns underlying the Discover Bank rule are beside the point, because "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753. Accordingly, the Court cannot base a finding of substantive unconscionability on the class waiver contained in the arbitration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

agreement.[6]

    Relatedly, plaintiff contends that the class waiver is unconscionable because under the CLRA the right to bring a class action is an unwaivable statutory right. See Cal. Civ. Code § 1750 ("Any waiver by a consumer of the [CLRA] is contrary to public policy and shall be unenforceable and void."). Plaintiff's argument is without merit. The Ninth Circuit held in Ting that because the CLRA applies only to contracts for the purchase or lease of goods or services, it is not a law of general applicability and therefore preempted by the FAA. Ting, 319 F.3d at 1148. Although the California Court of Appeal has reached a different conclusion, see Fischer v. DCH Temecula Imps. LLC, 187 Cal. App. 4th 601, 617 (2010) (holding that the "right to bring a class action lawsuit, an unwaivable statutory right under the CLRA, is a separate, generally available contract defense not preempted by the FAA.") (internal quotation marks omitted), this Court is bound to follow the Ninth Circuit's ruling on the issue. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 198 (1988) ("Although state law generally supplies the rules of decision in federal diversity cases, it does not control the resolution of issues governed by federal statute.") (internal citations omitted).

    Relying upon Gentry, plaintiff maintains that the arbitration agreement is substantively unconscionable because it does not fairly describe the disadvantages of arbitration. Opp'n at 13–14; Pl.'s Status Report at 12–13 (citing Gentry, 42 Cal. 4th at 470–71). However, the Court finds that the arbitration agreement at issue in this case does not paint as "highly distorted [a] picture of . . . arbitration" as the agreement in Gentry. MetroPCS's description of arbitration is relatively accurate and non-editorial.[7]

---

[6] At oral argument, plaintiff asserted that the Court must address whether the class waiver is substantively unconscionable because the amended T&Cs exclude that issue from the scope of decisions made by the arbitrator. See Egan Decl., Exh. L (disputes to be resolved by the arbitrator include "all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver)"). In light of the Court's determination that under Concepcion the class action waiver is not substantively unconscionable, plaintiff's argument is moot.

[7] The arbitration agreement plaintiff received when she activated her last line of service, provides in relevant part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

Furthermore, plaintiff's argument that MetroPCS has an affirmative duty to explain the "practical consequences" of a class action waiver is not supported by the law. See Ahmed, 283 F.3d at 1199 ("the general rule is that 'one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.'") (quoting Madden v. Kaiser Found. Hosps., 17 Cal. 3d 699, 710 (1976)).

      Plaintiff argues that the T&Cs contain an unconscionable two-year statute of limitations which considerably shortens the four-year period under the UCL, see Cal. Bus. & Prof. Code § 17208. Opp'n at 14–15; Pl.'s Status Report at 13–14. The T&Cs that plaintiff received when she activated her fourth line of service provide that "neither party has the right to bring a Claim or other legal action under these [T&Cs] more than two years after the cause of action arose." See Egan Decl., Exh. E. The Court cannot say that such a limitations period is substantively unconscionable as a matter of law.[8] Parties may agree to contract to shorten the limitations period that would otherwise apply, provided that the shortened period is itself reasonable. Hembrecht & Quist Venture

---

      IF ARBITRATION IS CHOSEN BY YOU OR US WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IF ARBITRATION IS CHOSEN, YOU AND WE WILL NOT HAVE RIGHTS THAT ARE PROVIDED IN COURT INCLUDING THE RIGHT TO A TRIAL BY JURY, AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT SUCH AS CLASS ACTION LITIGATIONS. OTHER RIGHTS INCLUDING THE RIGHT TO DISCOVERY AND THE RIGHT TO APPEAL ARE ALSO LIMITED OR ELIMINATED BY ARBITRATION. BY USING THIS SERVICE, YOU EXPRESSLY WAIVE YOUR RIGHT TO A JURY TRIAL IN THE EVENT THAT EITHER PARTY SELECTS ARBITRATION TO RESOLVE THE DISPUTE UNDER THIS AGREEMENT.

Egan Decl., Exh. E (typography in original).

    [8] The amended T&Cs contain a one-year statute of limitations. See Egan Decl., Exhs. F & L. Given that the question of whether plaintiff agreed to the amended T&Cs is a question properly reserved for the arbitrator, the Court withholds judgment as to whether a one-year statute of limitations is substantively unconscionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

Partners v. Am. Med. Int'l, Inc., 38 Cal. App. 4th 1532, 1548 (1995). Here, the two-year statute of limitations applies equally to both parties and does not unreasonably foreclose relief. Compare Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1043–44 (9th Cir. 2001) (provision shortening limitations period for wrongful termination action to six months not substantively unconscionable under California law) with A T & T Mobility II, LLC v. Pestano, No. C 07-05463 WHA, 2008 WL 682523, at *5 (N.D. Cal. Mar. 7, 2008) (180-day limitation period unconscionable where it did not apply equally to both parties).

Furthermore, although the two-year limitations period may prevent some MetroPCS customers from vindicating their rights, plaintiff has failed to establish that the limitations provision bars her claims. See Arellano v. T-Mobile USA, Inc., No. C 10-05663 WHA, 2011 WL 1362165, at *5 (N.D. Cal. Apr. 11, 2011) (holding that plaintiff did not have standing to challenge a change-in-terms provision that had never been applied to her). Plaintiff agreed to the two-year statute of limitations on December 20, 2009, when she activated her fourth line of service, and she filed her FAC on November 22, 2010. See Egan Decl. ¶ 17. Therefore, it appears that her claims were timely filed within the two-year statute of limitations.

Plaintiff also argues that the latest version of the amended T&Cs is unconscionable because it gives MetroPCS the unilateral right to terminate, change, alter, and amend the arbitration agreement. Pl.'s Status Report at 14. In light of the Court's finding that the issue of whether plaintiff agreed to the amended T&Cs must be determined by the arbitrator in the first instance, the Court declines to address this argument.[9]

Finally, plaintiff suggested for the first time at oral argument that the arbitration agreement is unconscionable because it contains a provision that seemingly reserves MetroPCS's right to initiate litigation in court. A lack of mutuality may be a basis for finding substantive unconscionability where an arbitration agreement requires arbitration for the weaker party while giving the party with superior bargaining power a choice of forum. See Armendariz, 24 Cal. 4th at 117–18; Davis v. O'Melveny & Myers, 485 F.3d 1066, 1080 (9th Cir. 2007). However, a lack of mutuality is not always invalid: "a

---

[9] At oral argument, plaintiff claimed that other provisions of the amended arbitration agreement are substantively unconscionable. The Court declines to address these arguments for the same reason.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1536 (1997).

Here, the arbitration agreement plaintiff received when she activated her last line of service contains language that is both mutual and non-mutual. For example, the arbitration agreement includes mutual language providing:

> Any claim, dispute or controversy . . . by either you or us against the other, . . . arising from or relating in any way to this Agreement or Services provided to you under this Agreement, . . . shall be resolved, upon the election by you or us, by binding arbitration. . . .
> . . . .
> IF ARBITRATION IS CHOSEN BY YOU OR US WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT.

Egan Decl., Exh. E (typography in original). However, the last paragraph of the arbitration agreement contains non-mutual language stating: "Notwithstanding the foregoing, MetroPCS has the right to institute legal or equitable proceedings in any court of competent jurisdiction for claims or disputes regarding: (i) amounts owed by you in connection with your purchase of Service, or (ii) your violation of the provisions of this Agreement." Id.

The language in the last paragraph of the arbitration agreement is non-mutual in the sense that it requires customers to arbitrate disputes at the election of MetroPCS, but permits MetroPCS to "institute legal or equitable proceedings in any court of competent jurisdiction" for certain disputes. See Armendariz, 24 Cal. 4th at 120; Davis, 485 F.3d at 1080. The Court finds that the non-mutual language in the arbitration agreement sweeps beyond a legitimate commercial need because it exempts from arbitration nearly all of the types of claims that MetroPCS is likely to bring. See Fitz v. NCR Corp., 118 Cal. App. 4th 702, 725 (2004) (holding that agreement is unfairly one-sided where it compels arbitration of claims more likely to be brought by weaker party, but exempts from arbitration the types of claims likely to be brought by the stronger party). Therefore, the Court concludes that the language granting MetroPCS the right to institute legal or equitable proceedings in any court of competent jurisdiction for claims regarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS - 6

| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
|---|---|---|---|
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

delinquent accounts or customers' violations of the T&Cs is substantively unconscionable.

### 3. Severability

That the arbitration agreement contains one unconscionable provision does not necessarily mean that the entire agreement is substantively unconscionable. Davis, 485 F.3d at 1085. Rather, it may be possible to sever the offending provision from the arbitration agreement. See Egan Decl., Exh. E ("If any portion of this arbitration agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force."); see also Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). Section 1670.5(a) gives "a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement." Armendariz, 24 Cal. 4th at 122.

Two considerations from Armendariz weigh in favor severing the unconscionable provision. First, the arbitration agreement contains only one unlawful provision – the non-mutual language allowing MetroPCS to litigate certain types of disputes in court. See id. at 124 ("multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."). Second, because the rest of the arbitration agreement contains language requiring both MetroPCS and its customers to arbitrate disputes at the election of either party, the court can restore mutuality simply by striking the non-mutual provision in the last paragraph of the arbitration agreement. Id. at 124–25 ("in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement."). Therefore, there is no need for the Court to impermissibly reform or re-write the contract to remove the "unconscionable taint" from the arbitration agreement. Id.

Given the "liberal federal policy favoring arbitration agreements," and the fact that there is only a single unconscionable provision that can be excised without forcing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | JS - 6 |
|---|---|---|---|
| Case No. | CV 09-7897 CAS (AJWx) | Date | August 8, 2011 |
| Title | VIVIAN CUADRAS, ETC. v. METROPCS WIRELESS, INC. | | |

court to re-write the arbitration agreement, the Court finds that severance is appropriate in this case. <u>Gilmer</u>, 500 U.S. at 25. Accordingly, the Court severs the following provision from the arbitration agreement: "Notwithstanding the foregoing, MetroPCS has the right to institute legal or equitable proceedings in any court of competent jurisdiction for claims or disputes regarding: (i) amounts owed by you in connection with your purchase of Service, or (ii) your violation of the provisions of this Agreement." Egan Decl., Exh. E. The remainder of the arbitration agreement is enforceable.

**V.    CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS MetroPCS's motion to compel arbitration. The proceedings are STAYED and the Clerk is directed to remove this action from the Court's civil active list pending completion of arbitration. The Court ORDERS the parties to file a joint status report regarding the posture of the arbitration every one hundred eighty (180) days and within twenty (20) days of the arbitrator's final decision. If the matter is resolved by settlement, or in the event plaintiff elects not to pursue arbitration, she shall promptly cause this action to be dismissed.

IT IS SO ORDERED.

|  |  | 00 | : | 22 |
|---|---|---|---|---|
| | Initials of Preparer | IM | | |